Edwin D. Levinson v. Commissioner. Edwin D. Levinson and Gertrude Levinson v. Commissioner. Jacques Coe (Formerly Jacques S. Cohen) v. Commissioner. Edwin H. Woarms v. Commissioner.
Levinson v. Commissioner
Docket Nos. 1610, 1611, 1687, 1688.
United States Tax Court
1944 Tax Ct. Memo LEXIS 19; 3 T.C.M. (CCH) 1277; T.C.M. (RIA) 44396; December 4, 1944
*19 Louis F. Lee, Esq., for Edwin D. Levinson and Gertrude Levinson, Petitioners. Aaron Holman, Esq., and J. Stanley Halperin, Esq., for Jacques Coe and Edwin H. Woarms, Petitioners. E. C. Algire, Esq., and Scott A. Dahlquist, Esq., for the respondent. STERNHAGEN In Docket No. 1610 an income tax deficiency of $10,072.88 was determined as to Edwin D. Levinson for 1939, and in Docket No. 1611 a deficiency of $432.27 was determined on a joint return as to Levinson and his wife for 1940. Levinson contends that the gain in an amount received by him in each year under a partnership agreement because of the decrease in value of a Stock Exchange seat was a long term capital gain. In Docket Nos. 1687 and 1688 deficiencies in income taxes of $5,463.52 and $2,094.41, respectively, for 1939 and 1940, as to Jacques Coe, and $4,272.48 for 1939 as to Woarms, result from the disallowance of deductions taken for amounts paid by the petitioners to Levinson by reason of the same partnership provision. Findings of Fact Edwin D. Levinson filed an individual income tax return for 1939, and he and his wife, Gertrude Levinson, filed a joint income tax return for 1940, in the Second District of New York. Both *20 returns were on the cash basis. Jacques Coe, formerly named Jacques S. Cohen, is a resident of New York City and filed his income tax returns for 1939 and 1940 on the cash basis in the Second District of New York. Edwin H. Woarms is a resident of New York City and filed his income tax return for 1939 in the Second District of New York. Levinson, in 1918, at a cost of $51,600, acquired a seat on the New York Stock Exchange. On December 17, 1925, a written agreement of partnership was made by Jesse Baar, Edwin D. Levinson, Jacques S. Cohen (whose name was later changed to Jacques Coe), and Edwin H. Woarms, to engage in the stock and bond brokerage business in New York City under the name of Baar, Cohen (later changed to Coe) & Co. The contract provided, inter alia, that on or before February 1, 1926, each party was to contribute to the capital of the co-partnership a specified minimum sum in cash and that Levinson
"shall further contribute to the copartnership the use of his New York Stock Exchange membership and/or seat, but the ownership thereof shall always be retained by him. As compensation for such use, the copartnership shall temporarily pay him a sum equal to six percent *21 (6%) of One Hundred Twenty-five Thousand Dollars ($125,000), such payments to be made quarterly beginning April 1st, 1926. At the end of the copartnership year, an average shall be struck of the selling price of all such Stock Exchange seats sold during that year. A sum equal to six percent (6%) of such average selling price shall represent the actual compensation payable to the party of the third part [Levinson] for the use of his seat and there shall accordingly and as soon as ascertainable be paid by the copartnership to him or by him to the copartnership, such sum as may be necessary to adjust or correct the temporary payment aforesaid. All compensation paid by the copartnership pursuant to this paragraph Third shall be charged to its expense account. "Fourth: - Notwithstanding the retention by the party of the third part [Levinson] of the ownership of his said Stock Exchange seat, the copartnership shall in manner following benefit by any increase over, and hold him harmless against any loss, respecting its 1925 market value which, for the purposes thereof, shall be taken as represented by the selling price on the last sale of any such seat in the year 1925. Upon the termination *22 of this agreement (unless the same be renewed by all of the parties, and, in such case, upon the termination of the final renewal agreement between all of the parties), or upon the dissolution of this or any renewed copartnership between all of the parties, whichever event shall first occur, the market value of said seat shall be determined by taking the selling price on the last next preceding sale of a seat on said Stock Exchange. Any excess of such selling price over and above the aforesaid 1925 market value shall be credited to such copartnership. Any excess of such 1925 market value over and above the selling price last referred to shall be borne by and charged to said copartnership." This partnership continued until December 31, 1927, when the business was taken over by a new partnership between the members of the old partnership and Frederick A. Fendel. Under this agreement all the assets of the old firm were sold to the new firm which assumed all the liabilities and obligations of the old firm as of December 31, 1927. Each partner was required to contribute to the capital a stated minimum sum or to transfer his credit on the books of the old firm in an amount sufficient for *23 that purpose. The agreement provided that Levinson "shall further contribute to the new firm the use of his New York Stock Exchange membership but the ownership thereof shall always be retained by him" and that the new firm was to pay him as "compensation for such use" six per cent of $200,000, which amount was subject to adjustment based upon the average selling price of all seats at the end of each partnership year. "By contributing the use of his membership in the New York Stock Exchange said party of the third part [Levinson] expressly agrees that in so far as may be necessary for the protection of the creditors of said new firm said membership shall be deemed to be an asset of said new firm, but not otherwise." This provision was pursuant to a rule adopted in October, 1927, by the New York Stock Exchange. The partnership agreement further provided: "SEVENTH: Notwithstanding the retention by the party of the third part of the ownership of his said Stock Exchange Membership, the old firm shall in manner following benefit by any increase over and shall hold him harmless against any decrease from its 1925 market value. For such purpose said 1925 market value is hereby *24 fixed at the sum of ONE HUNDRED AND FORTY-SEVEN THOUSAND DOLLARS. Upon the termination of this agreement or if it be renewed then upon the termination of the last renewal or upon the dissolution (through the death of any partner or otherwise) of this or any renewed copartnership between all of the parties, the market value of said Membership shall be determined by ascertaining the selling price on the last next preceding sale of a Membership in such Stock Exchange. Any excess of such selling price over and above the aforesaid 1925 market value shall be shared by the members of the old firm in accordance with the following entries thereupon to be made on the books of the new firm, viz: By crediting 30% of such excess to said Jesse Baar and 30% to said Jacques S. Cohen and 15% to said Edwin H. Woarms and by debiting the party of the third part on the books of the new firm with the aggregate of such credits. Any excess of such 1925 market value over and above the selling price last referred to shall be borne by the members of the old firm in accordance with the following entries thereupon to be made on the books of the new firm, viz: By debiting 30% of such excess *25 against said Jesse Baar and 30% against said Jacques S. Cohen and 15% against said Edwin H. Woarms and by crediting the party of the third part with the aggregate of such debits. This Paragraph SEVENTH does not in any wise apply to FREDERICK A. FENDEL who shall at no time and under no circumstances share in any increase or be liable for any decrease in the aforesaid 1925 market value of said Stock Exchange Membership or participate in any of the benefits of this Paragraph SEVENTH or be chargeable with any liability under this paragraph." Levinson was the floor member until some time in 1928, when he became seriously ill. Donald M. Smith was designated by the partners to take Levinson's place as floor member. In May, 1928, the partners agreed with Smith that he was to become a partner upon his admission to membership in the New York Stock Exchange, otherwise the agreement to be null and void. The agreement provided in part as follows: "FIFTH: Said DONALD M. SMITH shall contribute to the said copartnership the use of his membership in the New York Stock Exchange and by contributing to said copartnership said use of his membership in the New York Stock Exchange said DONALD M. SMITH *26 hereby expressly agrees that, insofar as it is necessary for the protection of the creditors of said copartnership, subject, however, to the constitution of said New York Stock Exchange, the proceeds of said membership shall be deemed to be an asset of said copartnership. The contributions of the other parties hereto to the capital of said copartnership shall be and remain as provided in the agreement entered into by and between them on December 31, 1927, plus such additions thereto as they may have heretofore or may hereafter from time to time contribute. * * * * *
"SEVENTH: If said DONALD M. SMITH should become insane or otherwise physically incapacitated from performing his duties as a broker on the floor of the New York Stock Exchange, or should die or if he should cease to be a member of said copartnership firm or if said copartnership firm should be dissolved, then upon the happening of any such contingency the membership of said DONALD M. SMITH in the New York Stock Exchange, after satisfying claims, if any, chargeable against said DONALD M. SMITH, pursuant to the rules and constitution of the New York Stock Exchange, shall be transferred for a nominal consideration pursuant *27 to said constitution of the New York Stock Exchange, to a person designated by JESSE BAAR, JACQUES S. COHEN, EDWIN D. LEVINSON and EDWIN H. WOARMS, or if they fail to make such designation within seven days after the happening of any such contingency, then said membership shall be sold in accordance with the rules and constitution of said New York Stock Exchange, and in the event of any such sale or in the event that said DONALD M. SMITH should voluntarily or otherwise sell his membership on the New York Stock Exchange, the net proceeds of the sale of said membership, after satisfying claims, if any, chargeable thereto pursuant to the rules and constitution of said New York Stock Exchange, shall be divided among said JESSE BAAR, JACQUES S. COHEN, EDWIN D. LEVINSON and EDWIN H. WOARMS in such manner that said EDWIN D. LEVINSON shall receive the proceeds of sale up to the sum of one hundred forty-seven thousand dollars ($147,000), and the balance of the proceeds of sale in excess of one hundred forty-seven thousand dollars ($147,000) shall be divided in the ratio of thirty percent (30%) to said JESSE BAAR, thirty percent (30%) to said JACQUES S. COHEN, twenty-five percent (25%) to said *28 EDWIN D. LEVINSON, and fifteen percent (15%) to said EDWIN H. WOARMS. If the net proceeds of sale of said membership shall be less than one hundred forty-seven thousand dollars ($147,000), then said JESSE BAAR shall and hereby agrees to pay to said EDWIN D. LEVINSON thirty percent (30%) of the amount of said deficit, and said JACQUES S. COHEN shall and hereby agrees to pay to said EDWIN D. LEVINSON a like thirty percent (30%) of the amount of said deficit, and said EDWIN H. WOARMS shall and hereby agrees to pay to said EDWIN D. LEVINSON fifteen percent (15%) of the amount of said deficit. Said DONALD M. SMITH hereby accordingly assigns to said JESSE BAAR. JACQUES S. COHEN, EDWIN D. LEVINSON and EDWIN H. WOARMS the said net proceeds to be derived from any such sale of the membership of said DONALD M. SMITH in said New York Stock Exchange. In the event that said DONALD M. SMITH should cease to be a member of said copartnership firm or if said copartnership firm should be dissolved said DONALD M. SMITH may at his option retain his membership in the New York Stock Exchange instead of selling the same, but immediately upon such withdrawal or dissolution said DONALD M. SMITH shall in either *29 event pay to said JESSE BAAR, JACQUES S. COHEN, EDWIN D. LEVINSON and EDWIN H. WOARMS a sum in cash equivalent to the next preceding selling price of a membership in the New York Stock Exchange, unless any of them or any other member of the firm of BAAR, COHEN & CO. as then constituted shall purchase another membership in the New York Stock Exchange, in which case the payment to be made by said DONALD M. SMITH shall be equivalent to the price to be paid for the membership purchased, and in either event the payment to be made by said DONALD M. SMITH shall be divided among said JESSE BAAR, JACQUES S. COHEN, EDWIN D. LEVINSON and EDWIN H. WOARMS in the manner and ratios, and with the preferences and guarantees hereinabove in this paragraph provided." With certain modification, all the provisions of the December 31, 1927, agreement were made a part of the May, 1928, agreement. For the purpose of making Smith the floor member of the partnership and for that purpose only, Levinson on May 15, 1928, transferred title to his seat to Smith, it being understood by all parties that the equitable ownership of the seat would remain in Levinson. Smith paid nothing for the seat. Thereupon, Smith *30 became floor member of the partnership and continued as such until after Levinson's withdrawal from the partnership in 1939. Upon the death of Baar, the surviving partners made a new partnership agreement dated April 10, 1936. This agreement contained prosions substantially similar to those contained in paragraphs Fifth and Seventh of the agreement of May, 1928. Smith was given an option to retain "his membership" in the New York Stock Exchange upon written notice to that effect before his withdrawal from or the dissolution of the partnership instead of his transferring it to a person designated by Cohen, Levinson and Woarms, as provided in the agreement, and in such event he was to pay to the partnership in cash a sum equivalent to the price of a seat in the last sale next preceding the date of withdrawal or dissolution; and the gross proceeds of the sale of the seat (without deduction of any claims whether against Smith or the partnership) were to be paid immediately to Cohen, Levinson and Woarms, as follows: $147,000 to Levinson, and of any excess 30/70 to Cohen, 25/70 to Levinson and 15/70 to Woarms. If the proceeds were less than $147,000 then 30/70 of the shortage was to be *31 paid by Cohen and 15/70 by Woarms to Levinson. Claims of any nature against the Stock Exchange membership were to be borne by the partnership. If the partnership were dissolved and the membership of Smith were transferred to Levinson, the partnership was to pay to Levinson any initiation fees then required to be paid under the rules of the Exchange. The agreement specifically provided that Levinson was also to receive 6 percent per annum of a sum equal to the average selling price of memberships in the Exchange during each calendar year. Early in 1939 Levinson elected to terminate the partnership and he requested that the seat transferred to Smith be returned to him. This would have required two initiation fees of $4,000 each. After discussion for about 60 days, it was determined to purchase a new membership for Levinson and permit Smith to continue to be the record owner of the original membership. Thereupon, a membership in the Exchange was purchased by Cohen in the name of Levinson at a cost of $51,000. Of the $96,000 decrease in value of the seat from the $147,000 fixed by the contract to $51,000 value shown by the price paid by Cohen, 30/70 was paid by Cohen and 15/70 by Woarms *32 to Levinson in cash. The amount paid by Cohen was $31,142.86 in 1939 and $10,000 in 1940, and by Woarms $20,571.43 in 1939. After the dissolution of the partnership in 1939 the original seat was transferred by Smith to Coe. The seat originally purchased by Levinson in 1918 and later transferred to Smith was never carried as an asset on the books of the partnership. Throughout the years from the beginning of the first partnership to his withdrawal in 1939, Levinson was paid by the partners for the use of the seat the contract compensation of 6 percent per annum of the agreed value. Levinson treated the seat as a capital asset and reported a long term capital gain of $10,115.84 from its sale or exchange, of which 50%, or $5,057.92, was taxable. Coe, in his 1939 return, claimed a deduction under "Other deductions authorized by law" of $31,142.86 described as "Payment of loss upon reorganization of Baar, Cohen & Co. 4/1/39", and in his 1940 return he claimed a deduction of $10,132.64 under the same heading described as "Loss on N. Y. Stock Exchange Seat, as per agreement". Woarms, in his 1939 return, claimed a deduction under "Other deductions authorized by law" of $20,572.98, described *33 as "Loss sustained on re-organization of Partnership of Baar, Cohen & Co." Memorandum Opinion STERNHAGEN, Judge: 1. Levinson, Dockets 1610 and 1611. It is not necessary to recount the detailed circumstances of the several partnership agreements and the arrangements about the Stock Exchange seat in order to reach the essential question for decision. Levinson seeks to avoid the deficiency on the theory that in 1939 and 1940 the $61,714.29 which he received from Coe and Woarms was the proceeds of a sale or other disposition of his Stock Exchange seat, the gain in which, since he had held the seat for more than two years, was a capital gain taxable only to the extent of 50 per cent. Internal Revenue Code, Section 117(a)(4); 117(b). The short answer to this is that Levinson did not sell or dispose of the seat. He continued to own it after the termination of his association with the partnership, and in addition he received the $61,714.29 to make up to him the reduction in its value. The reduction in value, even though it was actual, was not a realized loss; for a fluctuation in value of retained property is never recognized in tax law as a realized loss or gain. Such recognition *34 is withheld until the property is disposed of and thus converted into money or other property. Levinson was, for tax purposes, in the fortunate position of an investor in a stock exchange seat which cost him $51,600 in 1918 and, while he retained the seat, having someone pay him $61,714.29 because its value had fallen below $147,000. Thereby, in 1939, when a seat on the Exchange was worth $51,000, approximately what he had in 1918 paid for his seat, he gained the $61,714.29 and still owned a seat. If, later, he should sell the seat, he may thereby realize either a gain or loss, measured by the difference between its cost basis of $51,600 and the amount he receives. But this would not affect or be affected by the fact that in the termination of the partnership in 1939, he had realized a gain of $61,714.29. The fact that the record ownership of the seat was transferred to Smith in 1928 is not significant for present purposes, since all agreed that Smith's ownership was entirely nominal and was a partnership convenience. Levinson retained the right to have the seat returned to him upon termination of the partnership, and there is no importance in the substitution for economy's sake of *35 a new seat purchased by Coe for the purpose of fulfilling his obligation. The seat was never regarded or accounted for as an asset of the partnership, and since it was not sold by the partnership for a gain and the proceeds distributed, this case is wholly unlike Munson v. Commissioner, 100 F.2d 363. The Commissioner's determination in Dockets 1610 and 1611, and the gain of $51,714.29 in 1939, and $10,000 in 1940, was taxable in its entirety to Levinson as ordinary income is sustained. 2. Coe and Woarms, Dockets 1687 and 1688. Coe and Woarms deducted in the years of payment the $61,714.29 which they paid to Levinson in 1939 and 1940 according to their contract obligations to make good to him the reduction in value of the stock exchange seat below the fixed standard of $147,000, and the Commissioner disallowed the deduction without saying why. The reason now urged in support of the disallowance is that the amount was paid by Coe and Woarms as compensation for the partnership's use of the seat and is not within any statutory category of deduction. But the payment was not for the use of the seat, since under the contract of partnership *36 the use of the seat was compensated for by the payment annually of 6 per cent of an agreed base. This payment at the termination of the partnership was by virtue of a different provision, whereby Levinson was protected from some of the immediate effects of a diminution in value of the seat during its use by the partnership and limited in the enjoyment of an increase in value during the same period. In the latter event, all three would have enjoyed such increase in value and Coe and Woarms would have crashed in on it as a profit, and been taxed accordingly. Cf. Munson v. Commissioner, supra.They entered the arrangement deliberately for the business of profit or loss. When, instead of profit, they sustained a loss, it was within the statutory category of loss sustained in business or sustained in a transaction entered into for profit, and therefore was deductible. The Commissioner's disallowance of the deduction is reversed. Decisions will be entered in all cases under Rule 50.